414 So.2d 431 (1982)
Lizzie SIMS
v.
BOARD OF TRUSTEES, HOLLY SPRINGS MUNICIPAL SEPARATE SCHOOL DISTRICT.
No. 53236.
Supreme Court of Mississippi.
May 26, 1982.
*432 Mayfield & Smith, C. Emanuel Smith, Tupelo, for appellant.
Crutcher, Spencer & Brown, William C. Spencer, Holly Springs, for appellee.
Before PATTERSON, C.J., and BROOM and DARDEN, JJ.
DARDEN, Justice, for the Court:
This is an appeal from the Chancery Court of Marshall County affirming the action of the trustees of the Holly Springs Municipal Separate School District in terminating a teaching contract of appellant under Mississippi Code Annotated section 37-9-59 (Supp. 1981). We affirm.
Appellant had taught in the Holly Springs Elementary School System for eleven years. In the spring of 1979 the preparation of the Uniform Teaching Contract was delayed beyond the April date provided for in Mississippi Code Annotated section 37-9-17 (Supp. 1981) due to uncertainty in reference to the minimum education program. However, the teachers, including appellant, were timely notified by letter that they would be reemployed for the coming school year.
At that time the superintendent was preparing a new policy manual. He asked the trustees to permit him to attach certain segments of the manual in what is called an attachment to the Uniform Contract of Employment for teachers provided for in Mississippi Code Annotated section 37-9-23 (Supp. 1981). His reason was that he wanted to be sure there would be no misunderstanding about the provisions of the new manual excerpts which were set out in the attachment. Additionally, the attachment provided that the teacher had checked the salary figures in the standard contract and found them correct. The trustees approved the superintendent's request in May.
In August, before the school opened, the superintendent spoke to all the teachers and explained the meaning and purpose of the contract attachment. All of the teachers *433 signed the uniform contract, paragraph 3 of which provided:
3. That said person agrees and obligates himself to perform such duties as required by law and such additional duties as may be prescribed under duly adopted policies, rules and regulations of the Board of Trustees of the district; provided however said employee shall be entitled at his request to a written copy of said policies, rules and regulations.
All of the teachers signed the attachment to the contract except the appellant. The superintendent requested her on several occasions to sign the attachment but she refused to do so. He then wrote her a letter telling her that if the supplement was not signed by her within a given period of time he would recommend that she be dismissed for insubordination. She still refused.
When the superintendent made his recommendation that appellant be discharged she asked for a hearing under the provisions of Mississippi Code Annotated section 37-9-111 (Supp. 1981). A hearing was set and held before a hearing officer provided for in that section of the school law. On the hearing a considerable amount of testimony was offered by the school superintendent in regard to the uncooperative attitude of the appellant and of the problems that had been encountered by the administration in dealing with her over the past few years. Among other matters that were dealt with at some length at the hearing was the failure on the part of the appellant to properly gather and account for instructional materials which are referred to as Title IV-C materials. Additionally, the matter of the refusal of appellant to execute the attachment to the employment contract was dealt with at considerable length at the hearing.
It developed that the appellant had been charged with responsibility for the acquisition of some several thousand dollars worth of the Title IV-C instructional material and that at the end of the school year these had not been properly gathered or accounted for although some four or five requests were made of her to accomplish the proper disposition and handling of the materials involved. There was a writeup by the principal of the school in connection with the conferences that he held with the appellant in connection with the matter and she made certain written responses to the report that he formulated. Somewhat typical of the responses that the appellant made to the principal, in her written notations on the conference report, include the following:
On these occasions you were to pick up the materials. All of it was right there in your face. You stated I've blacked out T IV C and wrote my name on it, as I told you the very first time my own materials had been marked T IV C through mistake. I don't want this material. You act as if I can eat it or something.
... .
If you were a man enough to run this school like a concerned principal and stop letting two or three white females dictate to you, you will find it to be much easier and conducive for the school's situation.
Appellant's testimony at the hearing was to the effect that she had properly boxed up all of the materials; that some of the Title IV-C material which had had that notation blacked out and her name or initials placed on it was her own and that it had been mislabeled in the first instance, and that all of the material had been turned in to the principal.
It developed, however, that certain of the Title IV-C materials were discovered by the principal unaccounted for and in improper places in and about the appellant's room after the close or about the time of the close of school in the late spring of 1980.
In respect to her failure and refusal to sign the attachment to the employment contract the appellant testified at the hearing as follows:
Q. Mrs. Sims, you did state a few minutes ago that you agreed that you were going to be bound by all school policies, is that correct?
A. Yes, I did.
Q. Hasn't it come to you [sic] attention that this is part of school policy?
A. It is a part of school policy.

*434 Q. Did you check to see whether it was school policy at the time you refused to sign it?
A. No, I didn't. On the day of receiving this contract along with the attachment, meeting with Dr. Shelton and the teachers of the primary school system, we were not given any type reason as to why we should sign the attachment. There was never a statement given us that if we did not sign it, it would lead to the termination of our position. There was a question raised as to what reason we should sign this particular policy sheet when at the same time we are held responsible for abiding by the entire policy book. So when we are asked to sign this one sheet, the other policies relating to the book are just as equal as the one particular sheet. So I felt if we were to sign one policy sheet which is just as important as the other  the policy book is just as important as this one policy sheet  then why not sign it all? They are equally important. So we were not given any reason as to why we should. The question was raised. It was a female teacher that initiated the reason why we should sign it. It's something like a certified letter to indicate that you have seen this. At the same time we are held responsible for the entire policy book.
Q. You have been given another opportunity to sign that, have you not?
A. Yes.
Q. And you were told at that time by letter that if you didn't sign it would be considered insubordination and there would be a recommendation that you be dismissed?
A. Yes, I was.
Q. And you chose at that time not to sign it?
A. That is correct.
On the basis of the findings of the hearing officer the Board of Trustees terminated the appellant's contract and assigned as reasons the failure to properly account for and handle the instructional materials and for insubordination in refusing to sign the attachment to the contract. Appellant then perfected an appeal to the Chancery Court of Marshall County as provided in Mississippi Code Annotated section 37-9-113 (Supp. 1981). The chancery court reviewed the actions of the Board of Trustees and sustained the Board in dismissing the appellant.
Appellant appeals here and assigns two errors. The first is that the chancellor's review exceeded in scope the reasons assigned by the Board for dismissal and applied an incorrect rule in regard to the burden of proof. The second is that the Board's action is not supported by substantial evidence, it is arbitrary and capricious and that neither of the acts assigned as a reason for discharge is sufficient to justify the dismissal.
The chancellor carefully reviewed the full testimony of the several witnesses and the exhibits that were introduced at the hearing. There was no error in the chancellor's consideration of matters indicating an insubordinate, uncooperative course of conduct over a long period which culminated in the unjustified refusal to sign the attachment. The chancellor was not only justified, but required, to consider all of the facts in making a determination as to whether the Board's action was arbitrary, capricious or not supported by the evidence submitted.
The chancellor referred to the decision of this Court in Calhoun County Board of Education v. Hamblin, 360 So.2d 1236 (Miss. 1978), a case involving a refusal to employ under a separate and distinct statute from that involved in the present case, which has to do with the mid-term discharge. We do not understand that the reference of the chancellor meant that he applied a rule as to burden of proof contrary to any rule which would relieve the school administration of supporting the grounds for dismissal by substantial evidence. Even if the chancellor did so intend to rule, the record of the hearing demonstrates that the Board assumed and carried the burden to sustain the charges of insubordination and lack of cooperation.
*435 As to the second assignment of error, the fact that the Board set out only two of the several matters considered at the hearing as a basis for dismissal does not mean that all actions and background matters were not considered. Certainly, it does not mean that appellant was exonerated as to other matters that might have formed the basis for discharge.
Even if the refusal to sign the attachment had been the sole reason for the discharge, we consider it sufficient. The attached supplement contained excerpts from the policy manual. The manual and the supplement were properly approved and adopted by the Board, and the requirement that it be signed was neither illegal nor unreasonable. Indeed the standard contract provided that a teacher was obliged to comply with the duly adopted rules and policies of the Board but could request that she be furnished them in writing.
We find no definition of insubordination in our cases under our statutes. Among the definitions we have found, and one which we approve, is contained in Ray v. Minneapolis Board of Ed., Spec. Sch. Dist. No. 1, 295 Minn. 13, 202 N.W.2d 375 (1972), and is:
A `constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority.'
We are further of the opinion and hold that insubordination as so defined is "other good cause" within the meaning of Mississippi Code Annotated section 37-9-59 (Supp. 1981).
The chancellor, sitting as an appeal court, reviewed the whole matter, applied the test set out in section 37-9-113 (Supp. 1981), and quite properly determined that the action of the Board was supported by substantial evidence, was not arbitrary, or capricious and did not violate any statutory or constitutional right of the appellant.
Both under the provisions of the statute and in keeping within the scope of appellate review by the chancery court as set out in Brantley v. Surles, 404 So.2d 1013 (Miss. 1981), the chancellor very properly sustained the action of the school board in discharging the appellant here. In consequence we affirm the case.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.