757 So.2d 1010 (2000)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION and Yazoo Industries, Appellants,
v.
Gloria J. HUDSON, Appellee.
No. 1998-CC-01524-COA.
Court of Appeals of Mississippi.
January 25, 2000.
*1011 John W. Garrett, Jr., Clinton, Attorney for Appellants.
Gloria J. Hudson, Appellee, pro se.
BEFORE McMILLIN, C.J., IRVING, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. The Mississippi Employment Security Commission and Yazoo Industries appeal to this Court the decision of the Circuit Court of Yazoo County reversing the Mississippi Employment Security Commission's decision rendered on January 22, 1998. The Mississippi Employment Security Commission's Board of Review adopted the referee's findings of fact and opinion of December 17, 1997, denying Gloria Hudson's claim for unemployment compensation. Said decision was based on the referee's finding that Hudson is disqualified for benefits under Miss. Code Ann. § 71-5-513 A (1)(b) for misconduct connected with her work, specifically insubordination resulting from the use of vulgar obscenities directed towards her employer. The circuit court concluded that while Hudson's conduct did warrant termination, her conduct was merely an isolated incident involving the use of profanity directed towards a supervisor and not an incident tantamount to misconduct under the law. The Commission appeals *1012 this decision and raises the following assignment of error

I. ERRED IN FINDING THAT THE BOARD OF REVIEW'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND THAT THERE WAS AN IMPROPER APPLICATION OF THE LAW.
¶ 2. Finding reversible error, we reverse and render.

FACTS
¶ 3. Gloria Hudson was employed by Yazoo Industries as a production line operator from August 15, 1983 to October 29, 1997. On October 29, 1997, she was terminated for insubordination when she verbally confronted her team leader and supervisor after she was given a new job assignment. Hudson maintains that her usual job station, which she had become accustom with, was less difficult than the new assignment she was being asked to perform. Hudson initially stated that she was not even going to try to keep pace with the production line since her new station was unfamiliar to her. Testimony revealed that all employees are considered "operators" and could be assigned to different production stages as needed. The team leader overheard these statements and stated to Hudson that she was going to have to try and that she would be taught the procedures involving the new assignment. Hudson's dissatisfaction with her new work station and job assignment swelled to a verbal expression of this displeasure. She used extremely vulgar and offensive profanity directed towards her team leader and supervisor during this exchange. Several variations of "mother f-r" and "godd___it" were repeatedly uttered by Hudson in addition to calling her supervisors a "bitch" and a "son of a bitch." The obscenities continued until the floor supervisor, Larry Day, intervened and brought both Hudson and the team leader into his office to determine the source of the disturbance. Hudson also directed profanities at Day during his attempts to quell the situation.
¶ 4. Both Hudson and the team leader were sent home for the rest of the day until Day could ascertain what or who caused the disturbance. His investigation revealed that Hudson was the only person who used profanity. This was confirmed by several of the employees and team leaders who witnessed the confrontation. Two production lines were briefly interrupted as employees of Yazoo Industries ceased their production to witness the disturbance. As a result of this investigation the team leader was not discharged; however, Hudson was terminated on October 29, 1997.
¶ 5. Following her termination, Hudson filed for unemployment compensation. During the claims examiner's investigation, Hudson and a human resource representative from Yazoo Industries, Judy Dunham, were interviewed via a telephone conference. During this conference Hudson admitted that she had in fact used profanity during the confrontation, but nevertheless asserted that she was provoked into cursing by her team leader. Based on the statements of both Hudson and Dunham, the claims examiner ruled that Hudson's conduct amounted to insubordination which constituted disqualifying misconduct.
¶ 6. This decision to deny Hudson unemployment benefits was based on her refusal to perform her assigned tasks and for her use of profanity directed towards her team leader and supervisor. The claim's examiner found that Hudson's action's constituted misconduct, thereby disqualifying her from receiving unemployment benefits. Hudson appealed the claims examiner's decision and a hearing was held before a Commission referee on December 15, 1997. The referee concluded that Hudson's actions did amount to insubordination and constituted misconduct in connection with her work. The claims examiner's decision was affirmed on December 17, 1997. Hudson then appealed the referee's decision to *1013 the Commission's Board of Review. Likewise, the Board of Review concluded on January 22, 1998 that Hudson's actions amounted to insubordination and constituted disqualifying misconduct as supported by the substantial evidence presented in the case. Aggrieved by the Commission's final decision, Hudson appealed to the Circuit Court of Yazoo County.
¶ 7. The circuit court reversed the Board of Review's Decision in its opinion rendered on September, 11 1998. The circuit court concluded that while substantial evidence did exist in the record to support the referee's factual findings that insubordination had occurred on the part of Hudson, such an "isolated incident in which profanity was used towards a superior is not tantamount to misconduct under the [l]aw." The circuit court ruled that the Board had not properly applied the law pertaining to misconduct to the facts as presented by the parties.

ANALYSIS

I.

WHETHER THE CIRCUIT COURT ERRED IN FINDING THAT THE BOARD OF REVIEW'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND THAT THERE WAS AN IMPROPER APPLICATION OF THE LAW.
¶ 8. We note from the outset that Hudson failed to submit a brief to this Court in response to the Commission's appeal. The Mississippi Supreme Court has held that "the failure of the appellee to file a brief is tantamount to a confession of error and will be accepted as such unless we can with confidence say, after considering the record and brief of appellant, that there was no error." Mississippi Employment Sec. Comm'n v. Pennington, 724 So.2d 954, 955 (Miss.Ct.App.1998) (citing Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 360 (Miss.1992)). We could find that Hudson's failure to submit a brief to this Court is tantamount to a confession of error; however, given the application of law by the lower court to this matter, we feel the need to address the merits.
¶ 9. Our well settled standard of review requires this Court to give great deference to the findings of fact and conclusions reached by an administrative agency in effectuating its purpose:
Judicial review of an Employment Security Commission ruling is limited to determination of whether the decision is supported by substantial evidence .... This Court must review the record to determine whether there is substantial evidence to support the Board of Review's findings of fact, and further, whether, as a matter of law, the employee's actions constituted misconduct disqualifying him from eligibility for unemployment compensation benefits.... Miss.Code Ann. § 71-5-513 A(1)(b) (Rev.1989) provides that an individual may be disqualified for unemployment benefits if he was discharged "for misconduct connected with his work." The employer has the burden of showing by "substantial, clear, and convincing evidence" that the former employee's conduct warrants disqualification from eligibility for benefits....
City of Clarksdale v. Mississippi Employment Sec. Comm'n, 699 So.2d 578, 580 (Miss.1997)(quoting Foster v. Mississippi Employment Sec. Comm'n, 632 So.2d 926, 927 (Miss.1994)); see also Halbert v. City of Columbus, 722 So.2d 522, 524 (Miss. 1998). In addition, Miss.Code Ann. § 71-5-531 (Rev.1995) states that "the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."
¶ 10. In addressing the definition of "misconduct" and "insubordination," the lower court cited as authority for its decision two cases: Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982) and Shannon *1014 Engineering & Const., Inc. v. Mississippi Employment Sec. Comm'n, 549 So.2d 446, 449 (Miss.1989). In the Wheeler decision, the Mississippi Supreme Court was presented the task of addressing what constitutes misconduct as set forth, albeit undefined, in Mississippi employment compensation statutes. In its analysis of the meaning "misconduct," the Mississippi Supreme Court adopted the Wisconsin Supreme Court's definition of "misconduct" as set forth in Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941). The following definition of the term "misconduct," as used in our unemployment compensation statutes was reached:
[C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.
Wheeler, 408 So.2d at 1383 (Miss.1982) (quoting Boynton Cab Co., 237 Wis. 249, 296 N.W. 636 (1941)) (emphasis added).
¶ 11. Our supreme court further cited Jacobs v. California Unemployment Ins. Appeals Bd., 102 Cal.Rptr. 364, 366 (Cal. Dist.Ct.App.1972) for additional insight. The Jacobs court said, "The conduct may be harmful to employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton, or equally culpable." "The term misconduct imports conduct that a reasonable and fair minded person would consider to be a wanton disregard of the employer's legitimate interests." Richardson v. Mississippi Employment Sec. Comm'n, 593 So.2d 31, 33 (Miss.1992); see also Mississippi Employment Sec. Comm'n v. Phillips, 562 So.2d 115, 118 (Miss.1990) (emphasis added).
¶ 12. While acknowledging that insubordination does fall within the scope of misconduct as it relates to employment compensation cases, the lower court concluded that insubordination, as defined in Shannon Engineering & Const., Inc., 549 So.2d at 449 (Miss.1989) (quoting Sims v. Bd. of Trustees, Holly Springs Mun. Separate School Dist., 414 So.2d 431, 435 (Miss. 1982)), amounts to: "[A] constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." In the case sub judice, we are presented with the question of whether the uttering of vulgar obscenities by an employee directed at their supervisor rises to the level of a disqualifying act of insubordination and misconduct. The evidence in this case reveals that Hudson's utterings are the result of her displeasure with her supervisor's repeated orders to perform an authorized and reasonable task. We cannot say that such an incident does not rise to the level of a disqualifying act of insubordination and misconduct. While facially Hudson's refusal to perform the task assigned may appear to be an isolated incident of insubordination, a detailed review of the facts and circumstances surrounding the incident in question reflects differently. The record reflects that after Hudson was assigned a new production station, she immediately began to express her displeasure with her new assignment. In expressing this displeasure, Hudson stated that she was not going to try to keep up her station. When confronted by her supervisor over her statements regarding the assigned task, Hudson repeatedly refused *1015 to perform the assignment despite the supervisor's attempts to teach her how to run the station. The situation then escalated to the point that Hudson used extremely vulgar obscenities and directed them towards her supervisor during her refusal to perform her assigned tasks. The encounter even went so far as to briefly disrupt two of Yazoo Industries's production lines. Such unreasonable conduct could only be characterized as a wanton disregard of the employer's legitimate interests and as conduct which runs counter to the behavior which the employer has the right to expect from his employee. See Richardson, 593 So.2d at 33 (Miss. 1992); Wheeler, 408 So.2d at 1383 (Miss. 1982). Therefore, we cannot say that the Board of Review applied an incorrect application of law in its decision to deny Hudson her claim for unemployment compensation for insubordination constituting disqualifying misconduct. We reverse the decision of the Circuit Court of Yazoo County and render the decision.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY AWARDING UNEMPLOYMENT COMPENSATION IS REVERSED AND RENDERED. COSTS ARE TAXED AGAINST THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, AND MOORE, CONCUR.
PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, J.
PAYNE, J., dissenting:
In reviewing Ms. Hudson's situation, I must dissent to the majority's view that the one isolated October 1997 incident complained of is grounds to constitute misconduct as to preclude an award of unemployment benefits. The majority cited the rule from Wheeler v. Arriola which is the standard we follow:
Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute ... The conduct may be harmful to employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton, or equally culpable.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982).
As the supreme court stated in Wheeler, the conduct complained of must be wilful and wanton. Hudson's expression of her dissatisfaction at being assigned to a new job can hardly be said to be a wilful and wanton act warranting termination from her job and preclusion from unemployment benefits. Hudson had worked for this employer for fourteen years. To terminate her employment after this many years of service for one isolated incident and then to deny her unemployment benefits goes against the acceptable bounds of the MESC's administrative jurisprudence.
"The term misconduct imports conduct that a reasonable and fair minded person would consider to be a wanton disregard of the employer's legitimate interests." Richardson v. Miss. Employment Sec. Comm'n, 593 So.2d 31, 33 (Miss.1992) (citing Employment Sec. Comm'n v. Phillips, 562 So.2d 115 (Miss.1990)).
Applying the Richardson standard, a reasonable and fair minded person could easily find Hudson used poor judgment, acted imprudently, and exhibited an overall bad attitude. However, these acts are not enough to rise to the level of wanton disregard of the employer's legitimate interests.
In the past, the Mississippi Supreme Court has awarded unemployment compensation benefits to an employee who stole food from the supermarket where she worked (Piggly Wiggly of Bay Springs v. MESC, 465 So.2d 1062 (Miss.1985)), has *1016 awarded benefits to a UPS employee hired to wash delivery trucks who repeatedly ran customers' cars into stationary objects, even after he received training subsequent to each accident (Foster v. MESC, 632 So.2d 926 (Miss.1994)), and has awarded benefits to a forklift operator who ran over two co-workers's feet on two different occasions (Sprouse v. MESC, 639 So.2d 901 (Miss.1994)). If these flagrant exhibitions of misconduct were deemed not to be committed in wilful disregard of the policies of the employer, I certainly cannot see how Hudson's one incident where she lost her temper can rise to such a level as to constitute wilful and wanton misconduct.
Finding Hudson's actions not to rise to the previous standards for misconduct this Court has set, I respectfully to dissent to the majority's opinion finding otherwise.
IRVING, J., joins this separate written opinion.