767 So.2d 1088 (2000)
Andrew J. JOHNSON, Appellant,
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION and U.S. Postal Service, Appellees.
No. 1999-CC-01598-COA.
Court of Appeals of Mississippi.
September 26, 2000.
*1089 Andrew J. Johnson, Appellant, pro se.
Mark D. Ray, Jackson, Albert B. White, Madison, John Wesley Garrett, Jr., Clinton, Attorneys for Appellees.
BEFORE SOUTHWICK, P.J., BRIDGES, AND THOMAS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Andrew J. Johnson was discharged from his position with the United States Postal Service for failing to follow instructions and for unsatisfactory job performance. Unemployment benefits were denied because he was found guilty of disqualifying misconduct. We find that decision to be supported by substantial evidence and affirm.

FACTS
¶ 2. Andrew Johnson was employed by the United States Postal Service for more than thirty years as a letter-carrier in the Brookhaven post office. He was terminated in 1998 for repeated failure to follow his supervisor's instructions following previous warnings and suspensions. On the day of the incident that precipitated his termination, Johnson requested one hour of overtime to complete his mail deliveries. After inspecting the volume and mix of Johnson's mail, his supervisor determined that overtime was not warranted. Johnson was told to finish delivering the mail before his scheduled completion time of 4:00 P.M. Johnson stopped at about 3:30 P.M. to call a clerk at the post office and say he would not complete his deliveries. He returned to the post office at 4:12 P.M. with undelivered mail. Another carrier had to be sent to complete the deliveries.
¶ 3. Postal Service policy regarding supervisors' instructions is that employees carry out questioned supervisors' orders and only later file a protest. Johnson did not follow this procedure. On that basis, *1090 together with the prior progressive discipline, he was terminated.
¶ 4. Johnson initially was granted unemployment benefits. However, when the postal service appealed, a hearing was held and the referee found that Johnson had been previously warned and suspended on three occasions for unsatisfactory job performance, absence without approval of his supervisor and failing to follow instructions. The referee further found that Johnson knew of the "obey now, grieve later" procedure and that he failed to follow it. Johnson's conduct was found to be disqualifying misconduct. His unemployment benefits were revoked.
¶ 5. Johnson appealed. Upon consideration of the record, the Board of Review adopted the referees' findings of fact and opinion. Johnson then appealed to the Circuit Court of Lincoln County, which found after an extensive review of the record, that there were sufficient facts to support the referee's original findings and the Board of Review's decision to affirm it.

DISCUSSION
¶ 6. Johnson's appeal is pro se. We are obliged to consider that fact so that meritorious complaints are not lost. Johnson's assignments of error and arguments are not well-developed in his brief. Moore v. Ruth, 556 So.2d 1059, 1061 (Miss.1990). Therefore, we take some license in interpreting his intended assignments of error.

I. Insufficient Evidence of Disqualifying Misconduct
¶ 7. Our standard of review requires us to leave an administrative agency's findings and decisions undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights. Sprouse v. Miss. Emp. Sec. Comm'n, 639 So.2d 901, 902 (Miss.1994). A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise. Id.
¶ 8. Johnson first argues that the referee and the Appeals Board failed to consider certain statutes. Miss.Code Ann. §§ 71-5-1, et seq., and 71-5-513 (Supp. 1999). The latter contains the list of infractions that will disqualify an individual for unemployment benefits. Johnson then quotes the definition of misconduct:
[M]ere inefficiency, unsatisfactory conduct, failure of good performance as the result of inability or incapacity, inadvertencies, isolated instances of ordinary negligence, or good-faith errors in judgment or discretion are not considered `misconduct' precluding a discharged employee from unemployment benefits.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). He argues that "there is not enough evidence to prove misconduct" under this standard.
¶ 9. Johnson claims that his behavior was not misconduct because he submitted the correct form requesting an hour of overtime or assistance. When Price refused to approve the overtime, Johnson says he did his best to follow his supervisor's instructions, but that he could not "jeopardize his health and safety and the health and safety of others." Therefore, he returned to the post office without completing his mail deliveries.
¶ 10. The supreme court has defined "insubordination" as a "constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." Sims v. Bd. of Trustees, Holly Springs Mun. Separate School Dist., 414 So.2d 431 (Miss. 1982). Insubordination is within the scope of disqualifying misconduct, according to the supreme court. Shannon Engr'ing & Constr., Inc. v. Miss. Employment Sec. Comm'n, 549 So.2d 446, 449 (Miss.1989).
Misconduct imports conduct that reasonable and fair-minded external observers would consider a wanton disregard of the employer's legitimate interests. *1091 Something more than mere negligence must be shown, although repeated neglect of an employer's interests may rise to the dignity of misconduct.
Miss. Employment Sec. Comm'n v. Phillips, 562 So.2d 115, 118 (Miss.1990).
¶ 11. The transcript of the hearing before the referee contains extensive testimony by the supervisor and Johnson concerning the events that led to Johnson's termination. The record considered by the referee and the appeals board contains documentation of the offense in question as well as of at least three previous incidents in which Johnson was disciplined for unsatisfactory conduct. One prior suspension was for seven days, one for 286 days and one for 334 days. These incidents involved refusal to obey orders, refusal to leave work premises and having to be removed by the police, and excessive anger.
¶ 12. The testimony before the referee shows that, after Johnson requested overtime or assistance and was refused, he disobeyed his supervisor's direct command to finish delivering the mail in the time allowed. He even took time away from his duties to call the post office and complain to a clerk that he would not be able to finish delivering the mail on his route. He returned to the post office with undelivered mail instead of following the department's policy of obeying the order and submitting a grievance later. The referee, affirmed by the Board of Review and the circuit court, found this to be sufficient evidence of continuing misconduct to justify disqualification for unemployment benefits. There is a significant fact-finding component in the evaluation of this charge, since whether Johnson had too much mail to deliver timely is not something that we can independently review here. We find substantial evidence that requires us to leave undisturbed the findings made below.

II. Union-requested Arbitration
¶ 13. In his brief, Johnson asks whether the referee considered the fact that the union requested arbitration of the grievance he filed in response to his disqualification for unemployment benefits, but he does not explain why he believes this fact should have influenced the referee's ruling.
¶ 14. The grievance procedure of the National Association of Letter Carriers (NALC) allows letter carriers to challenge postal management in decisions that violate the union's national agreement with management. The union can choose to arbitrate between its members and management in decisions affecting those members. While a decision in Johnson's favor by a union arbitrator might afford him some satisfaction, it is not a factor in the determination of his rights under Mississippi law, and therefore need not be considered by the referee.
¶ 15. Nevertheless, the letter from the NALC stating that it had decided to request arbitration in this matter is included in the record and thus was before the referee, the Board of Review and the circuit court in their review of the case.
¶ 16. The conflicts in the testimony were for prior tribunals to resolve and are not for this appellate court. Within our standard of review, we find no error and affirm.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY AFFIRMING THE DECISION OF THE BOARD OF REVIEW IS AFFIRMED.
KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.
McMILLIN, C.J., NOT PARTICIPATING.