996 So.2d 176 (2008)
WESLEY M. BRELAND, REALTOR, INC., Appellant
v.
Nick AMANATIDIS and Cherry Amanatidis, Appellees.
No. 2007-CA-01129-COA.
Court of Appeals of Mississippi.
December 2, 2008.
*177 William E. Andrews, Purvis, Candance L. Rickman, attorneys for appellant.
Charles Edward Greer, attorney for appellees.
Before KING, C.J., GRIFFIS, and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Wesley M. Breland, Realtor, Inc. (Breland),[1] was permanently enjoined by the Lamar County Chancery Court from developing a parcel of land he owned in the Serene Hills subdivision for any purpose other than residential use. Breland appealed alleging the chancellor erred in restricting his "reserved" parcel of land to residential use because: (1) the restrictive covenants of the Serene Hills restricted lots 1-71 to residential development, but did not so restrict the "reserved" parcels; (2) the "reserved" parcels were clearly intended by the grantors to be used for purposes other than residential. Finding the chancellor's judgment for Nick and Cherry Amanatidis (collectively, Amanatidises) was based on substantial evidence and was neither manifestly wrong nor clearly erroneous, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. The heart of this dispute is about whether Breland is properly enjoined from developing his "reserved" parcel of land in the Serene Hills subdivision as commercial property under the restrictive covenants of Serene Hills and the Lamar County Subdivision Regulations of 1989 (subdivision regulations) as recommended by the Lamar County Planning Commission.
¶ 3. Wesley M. Breland (Breland), founder and sole owner of Wesley M. Breland, Realtor, Inc., and Herbert Slay were two of the original developers of Serene Hills. Together, they bought a sixty-acre parcel of property in Lamar County, Mississippi, which was later to become Serene Hills. In 1995, the two, along with several other individual investors, formed a development company, Red Oak, Inc., (Red Oak). Red Oak later purchased the sixty-acre parcel from Breland and Slay for the purpose of development.
¶ 4. The plat for Serene Hills was prepared by the employees of Shows, Dearman, & Waites. For the plat to be approved, it had to comply with the subdivision regulations. The subdivision regulations included definitions and regulations for making and filing a subdivision plat in Lamar County. Under section 404.03 of the regulations, "Required Information on Final Plat," the regulations specifically required the developer to provide the "[p]urpose for which sites, other than residential lots, are dedicated or reserved." Although Breland's lot was marked as "reserved," it was not designated with any purpose on the plat.
¶ 5. The Serene Hills plat was subsequently presented to Lamar County officials for approval. At the time of presentment, the subdivision regulations had been in place for approximately six years. The plat was approved and placed on the record in the land records of the Chancery Clerk of Lamar County. The plat depicts Breland's "reserved" parcel as being within the boundary of the Serene Hills subdivision. *178 The plat also had a certification from the engineer of Serene Hills that stated: "This is to certify that I surveyed the land shown on this plat and fully described above and subdivide the same with lots and that the plat hereon is a correct representation of said survey and subdivision."
¶ 6. On November 17, 1995, the restrictive covenants for Serene Hills were adopted and filed in the land records of the Chancery Clerk of Lamar County. The first restriction listed in the covenants stated: "All of the lots in the said Serene Hills Subdivision shall be known, described and used as residential lots, and no commercial building may be built thereon."
¶ 7. On the plat map, there are 71 designated lots numbered 1-71. There are two lots on the map marked "reserved." One "reserved" lot lies at the front corner of the subdivision, and the other, which is marked also as a "lagoon," is located at the back corner. Breland owns title to the "reserved" lot located on the front corner of the subdivision. Unlike the reserved lot at the back of the subdivision, which was designated for a lagoon, Breland's lot was not designated.
¶ 8. The plaintiffs, the Amanatidises, bought land adjoining Breland's front lot on October 19, 2005. Prior to closing, Nick reviewed the plat and covenants for Serene Hills. He testified that he understood the subdivision to be residential, so that all lots, including those marked as "reserved," would be for residential use only. Nick testified at trial that in determining whether to purchase Lot 39 and the house on it, he relied on an examination of the property with his wife, Cherry, and a review of the plat and restrictive covenants. The chancellor noted in his opinion that the Amanatidises did not review the subdivision regulations or involve any attorney or realtor in the purchase. When the Amanatidises learned Breland planned to develop his "reserved" lot as commercial property, they filed a complaint with the chancery court seeking to enjoin Breland from doing so.
¶ 9. The Amanatidises requested in their complaint that the court enter a declaratory judgment that would determine whether the restrictive covenants for Serene Hills applied to Breland's "reserved" lot. Alternatively, the Amanatidises pled that Breland should be equitably estopped from developing the "reserved" lot commercially. The matter was tried on the merits on April 26, 2007. At trial, several of the original developers and investors of Red Oak testified regarding what they thought "reserved" meant as it pertained to the overall plat and Breland's lot. The chancellor entered a judgment on June 28, 2007, in favor of the Amanatidises on their claim of equitable estoppel. Additionally, the chancellor permanently enjoined Breland from developing or using his lot for any purpose other than residential use.
¶ 10. On June 29, 2007, Breland filed his appeal alleging the chancellor erred when he found that the Amanatidises were entitled to rely on the Serene Hills plat, the Serene Hills restrictive covenants, and the Lamar County subdivision regulations, such that Breland was equitably estopped from commercially developing his "reserved" parcel.

DISCUSSION
¶ 11. The crux of this case is whether Breland's "reserved" lot is properly limited to only residential use. After the chancellor construed the plat, the restrictive covenants, and the subdivision regulations by looking at their "plain meaning," he found Breland's lot could only be used and developed for residential use. As a result, the chancellor granted the Amanatidises' claim for declaratory relief based on equitable *179 estoppel and permanently enjoined Breland from developing his "reserved" lot for any purpose other than residential use. Because we find the chancellor's findings were supported by substantial evidence and were not clearly or manifestly wrong, we affirm the chancellor's judgment for the Amanatidises.
¶ 12. The Court will not disturb a chancellor's findings if they are supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002). The "manifest error" standard applies only to findings of fact. "If the chancellor is manifestly wrong in basing his decision upon the facts, then this Court will reverse, otherwise, we will affirm." Boggs v. Eaton, 379 So.2d 520, 522 (Miss.1980). "This rule does not apply [to] questions of law." Id. Questions of law are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss. 2002).
I. WHETHER THE RESTRICTIVE COVENANTS OF SERENE HILLS APPLY TO BRELAND'S "RESERVED" PARCEL.
II. WHETHER IT WAS THE INTENT OF THE GRANTOR TO RESERVE BRELAND'S "RESERVED" PARCEL FOR UNRESTRICTED USE.
¶ 13. We consider Breland's general arguments and Issues I and II together because the same analysis is used to test the weight of the chancellor's findings and to conclude that his findings were supported by sufficient evidence. Breland argued that the chancellor erred in his judgment for the Amanatidises because: (1) even though the "reserved" lot's purpose was not specified according to regulation, in designating the lot "reserved," the public was put on notice that it was not solely for residential use; (2) the restrictive covenants of Serene Hills clearly indicated that only lots 1-71 would be restricted to residential development; and (3) the subdivision regulation requiring that a plat include the purpose of reserved parcels was not applicable because the Lamar County Board of Supervisors approved the plat. We disagree.
¶ 14. "Questions concerning the construction of contracts are questions of law" and are reviewed de novo. Parkerson v. Smith, 817 So.2d 529, 532(¶ 7) (Miss. 2002). However, if a contract is determined to be ambiguous, it is reviewed on appeal under a substantial evidence/manifest error standard. Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752(¶ 8) (Miss.2003).
¶ 15. The Court has set out a three-tiered approach to contract construction. One South, Inc. v. Hollowell, 963 So.2d 1156, 1162(¶ 10) (Miss.2007) (citation omitted). First, the "four corners" test is applied where the Court looks to "the language that the parties used in expressing their agreement." Id. Under this approach, the entire contract is examined as a whole, and particular words and phrases do not necessarily control. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352 (Miss.1990) (quoting Mounger v. Pittman, 235 Miss. 85, 88, 108 So.2d 565, 567 (1959)).
¶ 16. Only if the contract is unclear or ambiguous can the Court go outside the "four corners" of the contract to determine the parties' intent. One South, Inc., 963 So.2d at 1162(¶ 10) (quoting Facilities, Inc., 908 So.2d at 111(¶ 7)). "The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." Id. If the contract is unambiguous, then the Court must accept the plain meaning *180 of a contract as the intent of the parties. Ferrara v. Walters, 919 So.2d 876, 882(¶ 13) (Miss.2005).
¶ 17. Second, if the court cannot determine the clear meaning of the parties' intent from the "four corners" approach, then the court should apply the discretionary canons of contract construction. One South, Inc., 963 So.2d at 1162(¶ 10) (quoting Facilities, Inc., 908 So.2d at 111(¶ 7)). Under this approach, any ambiguities in the contract must be construed against the party who drafted it. Wade v. Selby, 722 So.2d 698, 701(¶ 9) (Miss.1998) (citing Estate of Parker v. Dorchak, 673 So.2d 1379, 1382 (Miss.1996)). Third, if a clear meaning still cannot be determined after applying the discretionary canons of contract construction, then the court can consider extrinsic or parol evidence. One South, Inc., 963 So.2d at 1162-63(10) (citation omitted).
¶ 18. The chancellor stated in his opinion that his final decision in this case was made with reference to three documents: (1) the plat of the Serene Hills subdivision; (2) the Serene Hills restrictive covenants; and (3) the terms of the subdivision regulations, which gave "guidance to interpretation of the plat and the restrictions affecting property embraced" within Serene Hills.
¶ 19. Furthermore, the chancellor stated that if he could determine the plain meaning of the above documents so that they would show the intent of the developers, "then the thoughts wandering around in their heads at the time and thereafter to the present, are irrelevant, and the documents and testimony concerning the idea the original developers had about Breland, Inc., of the `[r]eserved' lot for an office have no force or effect." In examining the plat, the restrictive covenants, and the subdivision regulations under the "four corners" approach, the chancellor did not find the documents to be ambiguous. Therefore, he went no further than the "four corners" step to construe the manifest intent of the parties in creating these three documents.
¶ 20. In looking at the plat for Serene Hills, the chancellor found the two "reserved" lots within the subdivision. He noted that Breland's "reserved" lot was located next to the Amanatidises' lot. Second, the chancellor found that Breland's "reserved" parcel was a "lot" within the meaning of Serene Hills' restrictive covenants. In determining that Breland's parcel was a "lot," the chancellor noted that at trial the "witnesses mostly agreed it was a `lot' [both] under common parlance and the subdivision regulations." As a result, the chancellor concluded that the restrictive covenants of Serene Hills applied to Breland's lot. The covenants provide that "[a]ll of the lots in the said Serene Hills subdivision shall be known, described and used as residential lots, and no commercial building may be built thereon." In applying this covenant to Breland's lot, the chancellor concluded it could only be used as a residential lot.
¶ 21. The chancellor determined that because under the subdivision regulations all parcels must be designated as to their use, or they will be presumed to be for residential purposes. Because Breland's lot was not designated for any purpose, the chancellor found it was presumed under the subdivision regulations to be for residential purposes. Under 403.03-07 of the subdivision regulations, a plat must include "the purpose for which sites, other than residential lots, are dedicated or reserved." The chancellor stated in his opinion, "if a use other than residential is not placed on the plat then the parcel is left as for residential use, which does not have to be specified under the regulations." Of the two "reserved" lots on the Serene Hills *181 plat, one lists its purpose as a "lagoon." The other "reserved" lot, Breland's lot, lists no purpose. Therefore, the chancellor found that Breland's lot must be presumed to be for residential purposes.
¶ 22. For the above reasons, Breland's argument that his lot is not restricted to residential use fails. Moreover, after going through the above analysis, the chancellor stated: "[T]he intent of Mr. Breland and his fellow investors, in context of regulations enacted in the public interest in favor of residential use of property not clearly designated as either residential or commercial, should be determined by what they said, and not by what they thought."
¶ 23. The chancellor's judgment in favor of the Amanatidises on their claim of equitable estoppel against Breland was proper and just. "[E]quitable estoppel may be enforced in those cases in which it would be substantially unfair to allow a party to deny what he has previously induced another to believe and take action on." PMZ Oil Co. v. Lucroy, 449 So.2d 201, 207 (Miss.1984). In other words, "one may ... not `change his attitude' to the substantial detriment of another and avoid an estoppel on grounds that at the outset his heart was pure." Id.
¶ 24. Here, the chancellor determined the Amanatidises, when deciding whether to purchase their home, were entitled to rely on (1) the subdivision plat, (2) the restrictive covenants filed by Red Oak, of which Breland was an original founder and developer, and (3) the terms of the subdivision regulations, "which give guidance to interpretation of the plat and the restrictions affecting property...." The chancellor found that before deciding to purchase his new home, Nick, in fact, did rely on a firsthand examination of the Serene Hills subdivision, the plat, and the Serene Hills restrictive covenants. Through none of these examinations could the Amanatidises have reasonably anticipated that the empty "reserved" lot next to their lot would soon be developed into commercial property. To now allow Breland to develop his property so that he can house a real estate office and storage for construction supplies would be substantially unfair under the circumstances.

CONCLUSION
¶ 25. We find that the chancellor's judgment for the Amanatidises on the basis of equitable estoppel was founded on substantial evidence and correctly applied legal standards. Therefore, the judgment of the Lamar County Chancery Court is affirmed.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Because Wesley Breland is the sole proprietor of Wesley M. Breland Realtor, Inc. "Breland" will be used interchangeably for the two throughout the opinion for the sake of clarity.