KING, C.J.,
 

 for the Court.
 

 ¶ 1. CNRS & Z, Incorporated, doing business as Nu-2-U Auto Sales, filed an action for replevin in the Circuit Court of Marion County against Randy Medious. CNRS
 
 & Z
 
 alleged that Medious was unable to obtain financing for a vehicle that he had purchased from the car dealership and demanded its return. The trial court found in favor of Medious, finding that CNRS
 
 & Z
 
 breached the retail installment contract and that CNRS
 
 & Z
 
 was responsible for the lien on Medious’s trade-in vehicle. Aggrieved, CNRS
 
 & Z
 
 appeals the trial court’s judgment. We find no error and affirm.
 

 
 *357
 
 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On May 1, 2008, Medious contracted with CNRS & Z, the creditor-seller, to trade in his 2002 Buick Rendezvous toward the purchase of a 2006 Chevrolet Impala.
 
 [1]
 
 The total sale price of Medious’s purchase on credit, including finance charges and other applicable fees and minus his down payment of $5,340, was $19,340.67. Per the terms of the agreement, Medious was obligated to make fifty-seven payments of $339.41. The contract also contained a provision, notifying Medious that CNRS & Z had assigned its rights in the contract to Credit Acceptance Corporation.
 

 ¶ 3. CNRS
 
 &
 
 Z claimed that Credit Acceptance denied Medious’s application for financing. The record shows that CNRS
 
 &
 
 Z sent a request to Credit Acceptance on May 15, 2008, asking Credit Acceptance to reassign all of its rights, title, and interest in the Impala and the contract with Medious back to CNRS
 
 &
 
 Z. Credit Acceptance sent a letter to Medious on May 15, 2008, which stated the following:
 

 As you know your retail installment contract was assigned to Credit Acceptance Corporation ... from your Selling Dealer. However, your Selling Dealer has asked us to re-assign your contract back to him. Based on this request, Credit Acceptance is in process of honoring this request subject to your Selling Dealer fulfilling his re-assignment requirement.
 

 Until the re-assignment is complete, you are obligated to continue honoring the terms and conditions of your retail installment contract, including making your payments to Credit Acceptance.
 
 [2]
 
 Once your contract has been re-assigned to your Selling Dealer, Credit Acceptance will send you a notice informing [you] of such re-assignment.
 

 On May 20, 2008, Medious received a second letter from Credit Acceptance, informing him that the contract had been reassigned to CNRS & Z and that all future payments should be remitted to CNRS & Z. Medious testified that he remitted his next car payment to CNRS & Z and that the car dealership refused to accept his payment.
 

 ¶ 4. Based on the allegation that Medious failed to obtain financing for his purchase, CNRS & Z returned the Buick to Medious and attempted to reclaim the Impala. Medious refused to return the Impala, and he refused to exercise further ownership of the Buick. Eventually, the Buick was repossessed.
 
 [3]
 

 ¶ 5. On June 6, 2008, CNRS & Z filed an action for replevin against Medious, seeking return of the Impala. The trial court ordered Medious to place the Impala in storage until a final judgment was reached on the merits of the case and informed the parties that the cost of storage would be born by the losing party.
 

 ¶ 6. The trial court entered its judgment on October 2, 2008, and entered an amendment to the judgment on October 10, 2008. Essentially, the trial court found that the retail installment contract did not contain any express or implied condition requiring Medious to obtain financing from a third
 
 *358
 
 party. The trial court found that the contract was legally binding and enforceable between the parties, and CNRS & Z breached the contract by returning the trade-in vehicle to Medious and by refusing to accept Medious’s payments for the Impala. Accordingly, the trial court entered a judgment against CNRS & Z, holding the car dealership responsible for the lien on the Buick and the towing and storage fees for the Impala.
 
 [4]
 
 Medious was ordered to continue making payments for the Impala to CNRS & Z. CNRS & Z alleges that after the final judgment was rendered, Medious failed to make subsequent payments for the Impala, and the vehicle was repossessed.
 

 ¶ 7. Aggrieved by the trial court’s ruling, CNRS & Z timely filed a notice of appeal. On appeal, CNRS & Z simply argues that the trial court erred by finding that it had breached the contract with Medious. Me-dious failed to file a brief on appeal.
 

 ANALYSIS
 

 ¶ 8. As previously mentioned, Medious failed to submit a brief on appeal. Typically, a party’s failure to submit a brief on appeal is equivalent to a confession of the errors alleged by the opposing party.
 
 Miss. Employment Sec. Comm’n v. Hudson,
 
 757 So.2d 1010, 1013, (8) (Miss.Ct.App.2000). However, the Court does not have to accept the opposing party’s failure to file a brief as an admission that the allegations are true if “we can with confidence say, after considering the record and brief of [the] appellant, that there was no error [in the trial court’s decision].”
 
 Id.
 
 (quoting
 
 Miss. Employment Sec. Comm’n v. Pennington,
 
 724 So.2d 954, 955(7) (Miss.Ct.App.1998)). After reviewing the record and CNRS
 
 &
 
 Z’s brief, we are confident in the trial court’s decision and, thus, undertake a review of the merits of this action.
 

 ¶ 9. On appeal, the factual findings of a trial judge sitting without a jury are accorded the same deference as a chancellor’s findings of fact.
 
 City of Jackson v. Powell,
 
 917 So.2d 59, 68(34) (Miss.2005). The trial court’s findings must be “supported by substantial, credible, and reasonable evidence.”
 
 Id.
 
 (quoting
 
 City of Jackson v. Perry,
 
 764 So.2d 373, 376 (Miss.2000)). This Court will not disturb the trial court’s findings of fact “unless they are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Id.
 
 However, questions of law, which includes the interpretation of contracts, are reviewed de novo.
 
 See id.; see also Wesley M. Breland, Realtor, Inc., v. Amanatidis,
 
 996 So.2d 176, 179(14) (Miss.Ct.App.2008).
 

 ¶ 10. CNRS & Z contends that Medious breached the retail installment contract because (1) he failed to obtain financing to purchase the Impala; (2) he failed to make his car payments; and (3) he allowed his trade-in vehicle to be repossessed. Based on the foregoing, CNRS & Z argues that the trial court erred by finding that the car dealership breached the retail installment contract and that the car dealership was responsible for the lien on the Buick.
 

 A. Whether there was a contract to sale.
 

 ¶ 11. To determine whether the retail installment contract had been breached, the trial court first determined whether there was a contract to sale and the terms of that contract. The rules regarding the construction of a contract are clear. First, the Court must look to the “four corners” of the contract and review
 
 *359
 
 the language the parties used to express their agreement.
 
 Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.,
 
 908 So.2d 107, 111(10) (Miss.2005). Next, if the Court is unable to grasp a clear understanding of the agreement from the “four corners” of the contract, the Court should apply the canons of contract construction.
 
 Id.
 
 at (11). Last, if the canons of contact construction prove to be insufficient, the Court may consider parol evidence to determine the parties’ intentions.
 
 Id.
 

 ¶ 12. The retail installment contract between CNRS & Z and Medious reads, in pertinent part, that:
 

 You may buy the Vehicle described below for cash or credit. The cash price is shown below as the “Cash Price.” The credit price is shown below as “Total Sale Price.” You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under the Retail Installment Contract (“Contract”), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures below. You also agree to the terms and conditions below ... and on the reverse side of this Contract....
 

 There is no language in the contract that suggests that the sale of the vehicle was contingent upon Medious obtaining financing from a third party.
 

 ¶ 13. CNRS
 
 &
 
 Z argues that it was not required to finance the purchase for Medious. CNRS & Z also argues that the sale was not complete because it did not transfer the title to the Impala to Medious, contrasting this case with
 
 Hobbs Automotive, Inc. v. Dorsey,
 
 914 So.2d 148 (Miss.2005). In
 
 Hobbs,
 
 the buyers contracted to purchase a vehicle from a car dealership and were given the title to the vehicle.
 
 Id.
 
 at 151(11). Later, an issue arose with the buyers’ financing, and the car dealership filed an action of replevin against the buyers.
 
 Id.
 
 at 150(2). In
 
 Hobbs,
 
 the retail installment contract actually contained a provision that stated that the car dealership was not obligated to sell the vehicle to the buyers until the terms of the retail installment contract were approved and accepted by a financing institution.
 
 Id.
 
 at 151(12). The supreme court found that “not being under an obligation to sell the automobile did not prevent the Dealership from selling to the [buyers]” and found that there was substantial evidence in the record showing that a sale had occurred.
 
 Id.
 
 at 151(14).
 

 ¶ 14. After reviewing the retail installment contract in this case, we find that the “four corners” of the contract are clear and unambiguous. If the sale of the Impala was contingent upon Medious obtaining third party financing, CNRS & Z should have used language in the contract to express so. No such language was included in the contract. The retail installment contract was between CNRS & Z and Me-dious. The contract clearly stated that Medious agreed to buy the Impala from CNRS & Z on credit, and he promised to pay CNRS
 
 &
 
 Z all amounts due under the contract. CNRS
 
 &
 
 Z attempted to assign its interest in the contract to Credit Acceptance and did so unsuccessfully. In regard to the transfer of title, the fact that the title to the vehicle was transferred in
 
 Hobbs
 
 was only one factor that the supreme court considered in its finding that a sale had occurred. We find that this issue is immaterial in this case.
 

 ¶ 15. Since the retail installment contract is not ambiguous, we do not reach CNRS & Z’s argument concerning the canons of contract construction and the use of parol evidence. Based on the foregoing, we find that the trial court did not
 
 *360
 
 err by finding that the transaction between Medious and CNRS & Z was a legally binding sale.
 

 B. Breach of Contract
 

 ¶ 16. It is clear that the trial court based its decision regarding the breach of contract claim on factual grounds. Thus, this Court will give deference to the trial court’s findings of fact.
 
 Powell,
 
 917 So.2d at 68(34).
 

 ¶ 17. The terms of the contract called for Medious to trade in his Buick and to make monthly payments to CNRS & Z in order to receive the Impala. The trial court found that Medious traded in his Buick, and he remitted his payments to CNRS & Z. The trial court also found that CNRS & Z tried to return the Buick to Medious and refused to accept Medious’s car payment. Despite CNRS & Z’s attempt to reject the delivery of Medious’s trade-in vehicle and to refuse acceptance of Medious’s payments, Medious completed his obligations under the contract. Conversely, the trial court found that CNRS
 
 &
 
 Z breached the contract. Based on a review of the record, we find that the trial court’s decision was supported by substantial evidence. Thus, the trial court did not err by finding that CNRS & Z had breached the contract.
 

 ¶ 18. CNRS
 
 &
 
 Z has brought it to the Court’s attention that the Impala was repossessed after the trial court rendered its judgment because Medious defaulted on the contract. At the time the judgment was rendered in the trial court, Medious had not defaulted under the contract. Any evidence regarding a subsequent breach is not properly before this Court and is of no consequence to the issues before this Court today.
 
 See Paracelsus Health Care Corp. v. Willard,
 
 754 So.2d 437, 441(16) (Miss.1999) (stating that an appellate court “can only review matters on appeal as were considered by the lower court).” This argument is without merit.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 .At the time of the sale, Medious executed a retail installment contract with CNRS & Z, a form giving CNRS & Z permission to obtain his credit report, a form giving Credit Acceptance permission to access his personal information and credit history, and a request for GAP insurance coverage.
 

 [2]
 

 . Medious testified that he had received a payment book from Credit Acceptance. This payment book was admitted into evidence and is included in the record on appeal.
 

 [3]
 

 . Trial testimony suggests that Credit Acceptance was the financing lender for the Buick.
 

 [4]
 

 . During the trial, Medious dropped his claim for the value of the trade-in vehicle. Credit Acceptance, the alleged lender for the Buick, was not a party to this action.