960 So.2d 592 (2007)
Kathi L. ACY, Appellant
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION, Appellee.
Mississippi Department of Employment Security, Appellant
v.
Kathi L. Acy, Appellee.
Nos. 2005-CC-02019-COA, 2005-CC-02378-COA.
Court of Appeals of Mississippi.
July 17, 2007.
Douglas E. Levanway, Jackson, for Kathi L. Acy.
*593 Albert B. White, Madison, for Mississippi Employment Security Commission.
EN BANC.
IRVING, J., for the Court.

MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. The motion for rehearing is denied. However, the previous opinion is withdrawn and this opinion is substituted therefor.
¶ 2. This appeal arises from a decision of the Circuit Court of Rankin County, affirming the finding of the Board of Review of the Mississippi Department of Employment Security[1] (the Board): that Kathi L. Acy, a former Wal-Mart employee, committed disqualifying misconduct pursuant to Mississippi Code Annotated section 71-5-513 (Supp.2006), and is therefore not entitled to unemployment compensation benefits. Aggrieved, Acy appeals and assigns as error the trial court's affirmance of the Board's ruling.
¶ 3. The Mississippi Department of Employment Security (the Department) also appeals the decision of the circuit court directing the Department to reimburse Acy for benefits she received during the appeal process.
¶ 4. Finding error, we reverse and remand.

FACTS
¶ 5. For over five years Acy worked as a door-greeter at Wal-Mart in Flowood, Mississippi. As a part of her job, she was required to stop any customer who set off the store's security alarm as the customer attempted to exit the store. She was also required to record information from the customer's receipt.
¶ 6. On February 10, 2005, Acy was at her post when a customer's digital versatile disc (DVD) set off the security alarm. The customer showed her receipt as proof that she had in fact purchased the DVD. However, the customer complained to management that Acy exhibited rude behavior toward her during the incident. More specifically, the customer complained that Acy cursed in her presence. As a result, Acy was fired for violating Wal-Mart's policy which prohibits rude or abusive conduct toward customers. After her termination, Acy filed for and was awarded $164 in weekly unemployment benefits by the claims examiner. Wal-Mart appealed.
¶ 7. During the hearing on Wal-Mart's appeal, Acy testified that the customer became upset and snatched the receipt from her before she could write down all of the pertinent information and that the customer refused to return the receipt to her. Acy further testified that Acy cursed under her breath as she walked to a nearby table. However, she insists that her comments were not rude nor abusive and were not directed toward the customer. Nevertheless, the customer, her two daughters, and the daughters' eight-year-old friend heard Acy's remarks. As a result, the customer demanded to speak with the manager.
¶ 8. Dwayne Allen Patterson was the manager at the Wal-Mart in Flowood at the time of the incident. Patterson testified that Acy admitted using profanity in the presence of the customer but claimed that she did not intend for the customer to hear her.
*594 ¶ 9. At the close of the hearing, the appeals referee concluded that Acy's conduct disqualified her from receiving unemployment benefits. Acy appealed to the Board of Review. However, after receiving a notice of overpayment from the Department, which requested immediate restitution, Acy repaid the amount that she was initially awarded, as well as the interest which had accrued. In the meantime, the Board affirmed the decision of the appeals referee. Acy then appealed to the circuit court which affirmed the Board's denial of benefits but held that Acy was not obligated to pay restitution to the Department for benefits that she received while ineligible, because the benefits were not awarded due to any fraud or misrepresentation on her part. In addition, the court ordered the Department to reimburse Acy $1,003.68 which she had paid pursuant to the notice of overpayment.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 11. Appellate courts have limited review of decisions of the Mississippi Department of Employment Security. Hodge v. Miss. Empl. Sec. Comm'n, 757 So.2d 268, 270(¶ 5) (Miss.2000). The Mississippi Supreme Court has stated, "[w]hen reviewing a decision of the MESC, [an appellate court] must affirm when the decision is supported by substantial evidence." Reeves v. Miss. Empl. Sec. Comm'n, 806 So.2d 1178, 1179(¶ 5) (Miss.Ct.App.2002) (citing Richardson v. Miss. Empl. Sec. Comm'n, 593 So.2d 31, 34 (Miss.1992)).
¶ 12. It is well settled in Mississippi law that the findings of an agency must remain undisturbed unless the agency's order "(1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional rights." Allen v. Miss. Empl. Sec. Comm'n, 639 So.2d 904, 906 (Miss.1994) (citing Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993)). An appellate court, "must not reweigh the facts of the case or insert its judgment for that of the agency." Id. Mississippi Code Annotated section 71-5-531 (Supp.2006) provides in part that, "[i]n any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."
1. Misconduct
¶ 13. The question for review here is whether there is substantial evidence to support the agency finding that Wal-Mart met its burden of showing by substantial evidence that Acy committed disqualifying misconduct. In Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982) (citing Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941)), the court defined "misconduct" as:
conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" *595 within the meaning of the statute.
¶ 14. "The conduct may be harmful to [the] employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton or equally culpable." Id. (quoting Jacobs v. California Unemployment Appeals Bd., 25 Cal.App.3d 1035, 1037, 102 Cal.Rptr. 364, 366 (1972)).
¶ 15. Acy recognizes that her conduct may have justified her termination; however, she contends that one incident of cursing under her breath in the presence of a customer does not rise to the level of disqualifying misconduct as defined by Mississippi case law. In support of her argument, Acy relies on Gordon v. Miss. Empl. Sec. Comm'n, 864 So.2d 1013 (Miss. Ct.App.2004).
¶ 16. In Gordon, an employee was terminated for violating company policy and for using profanity toward his supervisor. This Court stated,
[u]nder these circumstances, although it is perhaps understandable why he was miffed, there still was no justification for using profanity toward his supervisor. But by the same token, it is more than a stretch to say that what he did in this one single incident was the equivalent of a `willful and wanton disregard of [his] employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.'
Id. at 1020(¶ 30) (quoting Wheeler, 408 So.2d at 1383).
¶ 17. Acy also argues that Wal-Mart failed to prove that she had been informed that she could be terminated for one instance of being rude to a customer or for using profanity. Acy further contends that Wal-Mart failed to show that the rule was fairly and consistently enforced.
¶ 18. Patterson, the manager, testified at the hearing that, although he does not recall specifically stating in an employee meeting that one instance of cursing was grounds for immediate termination, the policies and procedures, which were given to Acy, provide a list of actions of misconduct which may result in immediate termination. Rude and abusive conduct toward a customer is included in the list.
¶ 19. The undisputed testimony establishes that Acy did not direct her comments toward the customer. However, accepting that Acy's conduct was a violation of Wal-Mart's policies and procedures, thus justifying her termination, it is the opinion of this Court that her actions do not amount to disqualifying misconduct as defined by Mississippi case law, as "an isolated incident of misconduct by [an] employee does not generally disqualify [the employee] from receiving the benefit of unemployment compensation." Daniels v. Miss. Empl. Sec. Comm'n, 904 So.2d 1195, 1197(¶ 9) (Miss.Ct.App.2004) (citing Gore v. Miss. Empl. Sec. Comm'n, 592 So.2d 1008, 1011 (Miss.1992)). Thus, we reverse the circuit court's finding that Acy committed disqualifying conduct within the meaning of Mississippi Code Annotated section 71-5-513 A.(1)(b) (Supp.2006), as construed by the court in Wheeler.
¶ 20. The dissent seeks to distinguish Gordon on the basis that Gordon involved profanity toward a supervisor, while this case involves profanity uttered in the presence of a customer. Respectfully, we say that the dissent misreads our holding in Gordon. We reversed the denial of benefits to Gordon not because Gordon's profanity was directed toward a supervisor, as opposed to a patient of the hospital, but because "it is more than a stretch to say that . . . one single incident [is] the equivalent of a `willful and wanton disregard of [his] employer's interest as is found in *596 deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.'" Gordon, 864 So.2d at 1020(¶ 30) (quoting Wheeler, 408 So.2d at 1383). Paraphrasing what we said in Gordon, we do not question that Wal-Mart had a legitimate reason for terminating Acy, but a legitimate basis for terminating an employee does not necessarily equate to a justification for denying unemployment benefits. Id. at 1019(¶ 29).
2. Overpayment
¶ 21. This issue is moot based on our finding that Acy's conduct did not disqualify her from receiving unemployment benefits. She will receive, as a part of her weekly benefits, the amount which she repaid to the Department.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS REVERSED AND REMANDED TO THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY FOR A DETERMINATION OF THE AMOUNT OF BENEFITS DUE APPELLANT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, P.J., CHANDLER AND ISHEE, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J., AND ROBERTS, J. KING, C.J., BARNES AND CARLTON, JJ., NOT PARTICIPATING.
GRIFFIS, J., Dissenting:
¶ 23. I respectfully dissent. As the author of the dissenting opinion in Gordon v. Miss. Empl. Sec. Comm'n, 864 So.2d 1013 (Miss.Ct.App.2004), I maintain my opinion that the majority incorrectly reweighs the evidence and substitutes its judgment for that of the administrative agency, the Mississippi Department of Employment Security (the "Department").
¶ 24. When examined under the definition of misconduct established in Wheeler, Acy's actions, comments and conduct, clearly constituted "conduct evincing such . . . disregard of standards of behavior which the employer has the right to expect from his employee. . . ." Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). There is a substantial difference between this case and Gordon. Here, Ms. Acy's profanity was not heard by an employee but instead by a customer. Certainly, Wal-Mart has a right to expect that its greeters will not use profanity in the presence of its customers. Ms. Acy admits that she made profane statements in the presence of a customer and that she was aware that profanity was not allowed.
¶ 25. This is not an insubordination case, like Gordon. It is one for violation of a policy. Wal-Mart had a policy that prohibited employee's rudeness to customers. The utterance of a profanity in the presence of a customer is certainly rude behavior, regardless of whether she intended the customer to hear it.
¶ 26. In my opinion, Ms. Acy's behavior and use of profanity in the presence of a customer was "conduct evincing such . . . disregard of standards of behavior which the employer has the right to expect from his employee. . . ." Id. I conclude that the Department correctly determined that Ms. Acy's actions, comments and conduct constituted misconduct, which disqualified her from unemployment compensation benefits. Accordingly, I would affirm the decisions of the Department and the circuit court.
MYERS, P.J. AND ROBERTS, J., JOIN THIS OPINION.
NOTES
[1] The Mississippi Department of Employment Security was formerly known as the Mississippi Employment Security Commission.