GRIFFIS, P.J.,
for the Court:
¶ 1. Sharron Gammage’s employment with Jasper General Hospital was terminated. Gammage applied for unemployment benefits from the Mississippi Department of Employment Security (“MDES”), which were denied by the MDES administrative law judge (“ALJ”). She appealed to the MDES Board of Review, which affirmed. Gammage then appealed the Board of Review’s decision to the circuit court, and the decision was again affirmed. On appeal, Gammage argues that her actions did not amount to insubordination, her actions did not violate any other policy in the employee handbook, and mere disrespectful behavior does not amount to misconduct; thus, the denial of unemployment benefits was improper. Finding error, we reverse and remand the judgment of the circuit court.
FACTS
¶ 2. Gammage worked for Jasper General Hospital from May 14, 2007 to May 3, 2011. Gammage was a laundry aide in the laundry department.
¶ 3. On May 3, 2011, Gammage was off from work. Gammage contacted Annie Campbell, a coworker, who Gammage believed had written a negative letter about her. Campbell responded that she had not done so. Campbell then called Melissa Blocker, their director, to inform her of the conversation. Blocker called her assistant, Kim Windham, and asked her to contact Gammage.
¶ 4. Windham testified that her conversation with Gammage became heated. Gammage was not pleased that Windham, rather than Blocker, had called her at home on her day off. Windham suggested that Gammage come to the hospital so that Gammage, Windham, and Blocker could discuss the situation with the hospital administrator, Mr. Posey. Gammage declined. She said that she did not want to come to the hospital, because she had just washed her hair, and it was cold outside.
¶ 5. Posey, Windham, and Blocker met to discuss the phone conversation between Windham and Gammage. Initially, they decided to issue Gammage a written warning, because they believed she was disrespectful to Windham.
¶ 6. Before the written warning was prepared, Gammage and Blocker spoke on the phone. Blocker testified that Gammage told her that Windham was not her supervisor and should not call her at home on *1296 her day off. Gammage denied making this comment. Blocker also said that Gam-mage raised her voice during this conversation. Gammage denied raising her voice. Blocker testified that she told Gam-mage more than once to calm down. Then, Blocker told Gammage that she was fired. Blocker testified that she fired Gammage for insubordination and improper conduct. Blocker admitted that Gam-mage did not refuse to do anything that she was asked to do.
¶ 7. On May 4, 2011, Gammage was officially terminated from her employment with the hospital for insubordination and improper conduct. Gammage filed for unemployment benefits with MDES. This appeal considers whether it was proper for MDES to deny Gammage’s claim for unemployment benefits.
STANDARD OF REVIEW
¶8. When this Court reviews administrative-agency decisions, the standard of review is that “[a]n agency’s conclusions must remain undisturbed unless the agency’s order[:] 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one’s constitutional rights.” Maxwell v. Miss. Emp’t Sec. Comm’n, 792 So.2d 1031, 1032 (¶ 7) (Miss.Ct.App.2001) (citation omitted). Upon judicial review, “the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” Miss. Code Ann. § 71-5-531 (Rev.2011). Because we find that MDES’s order to deny Gammage unemployment benefits was not appropriate under the facts, we reverse the circuit court’s judgment.
DISCUSSION
¶ 9. Mississippi Code Annotated section 71-5-513(A)(l)(b) (Supp.2012) provides that if an employee is discharged for misconduct, she is not eligible for unemployment benefits. Gammage argues that she was not guilty of misconduct. To deny unemployment benefits, the employer has the burden of showing “by substantial clear and convincing evidence” that the former employee’s actions amounted to disqualifying misconduct. City of Clarksdale v. Miss. Emp’t Sec. Comm’n, 699 So.2d 578, 580 (Miss.1997) (quoting Foster v. Miss. Emp’t Sec. Comm’n, 632 So.2d 926, 927 (Miss.1994)).
¶ 10. The Mississippi Supreme Court has defined misconduct as:
[Cjonduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer [fall] within the term.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982) (citation omitted). This Court noted that “whenever analyzing ‘misconduct,’ we not only assess violations of an employer’s stated policy, but we also consider all action (or inaction) which could be expected of the employee, and which affects the interests of the employer, regardless of whether such actions are included within the stated policy.” Miss. Emp’t Sec. Comm’n v. Percy, 641 So.2d 1172, 1175 (Miss.1994).

A. Gammage’s conduct did not amount to insubordination, and her actions did not violate the employee handbook.

¶ 11. Gammage contends that her behavior did not amount to insubordina *1297 tion. Throughout the hearing, the hospital insisted that Gammage was terminated for insubordination. On the notice to employer of the claim filed and request for information filed by the hospital, the hospital stated that insubordination was the reason for Gammage’s termination from employment.
¶ 12. Under the hospital’s employee handbook, two instances of insubordination may result in dismissal. The handbook divides the various offenses an employee can commit into categories. Certain offenses warrant immediate dismissal. However, a number of offenses, classified as “category-two” offenses, require two violations before the employee may be dismissed. Category-two offenses include:
1. Insubordination
2. Failure to follow supervisor[’]s instructions
3. Violation of safety rules in absence of a threat to human life
4. Unauthorized absence without reasonable and justifiable cause
5. Failure to report to work without appropriate notification to supervisor
6. Leaving the work site without permission
7. Unauthorized use of hospital property or record.
At the hearing, the hospital offered a copy of the handbook and a certification, signed by Gammage, that acknowledged she understood it was her responsibility to read the handbook.
¶ 13. Insubordination is defined as “a constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority.” Gordon v. Miss. Emp’t See. Comm’n, 864 So.2d 1013, 1019 (¶ 27) (Miss.Ct.App.2004) (citation omitted). Gammage argues that she was not ordered to come to the hospital to meet with Posey. Thus, she argues that she did not refuse to obey a direct or implied order.
¶ 14. Gammage also argues that her actions did not violate any rule in the handbook. Mississippi law provides that employees “shall not be found guilty of misconduct for violation of a rule unless: (1) the employee knew or should have known of the rule; (2) the rule was lawful and reasonably related to the job environment and job performance; and (3) the rule is fairly and consistently enforced.” Captain v. Miss. Emp’t Sec. Comm’n, 817 So.2d 634, 637 (¶ 19) (Miss.Ct.App.2002).
¶ 15. Insubordination may rise to the level of misconduct on certain occasions. Young v. Miss. Emp’t Sec. Comm’n, 754 So.2d 464, 466 (¶ 7) (Miss.1999) (citations omitted). The supreme court has held that an isolated incident is not a constant or continuing intentional refusal. Gore v. Miss. Emp’t Sec. Comm’n, 592 So.2d 1008, 1010 (Miss.1992). This Court has held that when an employee repeatedly refuses to perform a task she was ordered to perform and curses at her supervisor, she has committed misconduct through her insubordination. Miss. Emp’t Sec. Comm’n v. Hudson, 757 So.2d 1010, 1014-15 (¶ 12) (Miss.Ct.App.2000).
¶ 16. Gammage asserts that there was neither a single incident of insubordination, nor was there a constant and continuing refusal. The record indicates that Gammage never refused to do anything beyond a mere suggestion. There was never a direct order to come to the hospital for a meeting with Windham, Blocker, and Posey, but rather, a mere suggestion to do so. In fact, Blocker testified that Gammage did not refuse to do anything. Even if Gammage had been ordered to come to the hospital for a meeting, this would have amounted to an isolated incident.
*1298 ¶ 17. Gammage asserts, and we agree, that there was no evidence in the record that established Gammage committed an offense that amounted to misconduct. Additionally, we find error in the circuit court’s finding that Gammage committed two category-two offenses. MDES asserts that Gammage committed two offenses of insubordination. We disagree. There was no constant and continual direct order to do anything in this situation. At most, there was a mere suggestion to come to the hospital to discuss the previous conversation between Gammage, Blocker, and Windham.

B. Gammage’s disrespectful behavior was not misconduct that warrants a denial of unemployment benefits.

¶ 18. Gammage argues that her conduct, while arguably disrespectful, did not amount to disqualifying misconduct to warrant a denial of unemployment benefits.
¶ 19. This Court has held that a single instance of disrespect and violation of a rule does not amount to misconduct. Gordon, 864 So.2d at 1020 (¶ 32). In Gordon, an employee had brought dirty linens into an area in which dirty linens were forbidden. Id. When alerted to his mistake, he cursed at his supervisors. Id. at 1015 (¶ 9). This Court noted that this single incident did not meet the definition of misconduct. See id. at 1020 (¶ 32). This Court stated:
[I]t is more than a stretch to say that what he did in this one single incident • was the equivalent of a “willful and wanton disregard of [his] employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.”
Id. at (¶ 30) (quoting Wheeler, 408 So.2d at 1383).
¶ 20. Additionally, in Gordon, this Court noted that “termination for cause does not necessarily mandate that unemployment benefits be denied.” Id. at 1019 (¶ 29). In Acy v. Mississippi Employment Security Commission, 960 So.2d 592, 595 (¶¶ 15, 19) (Miss.Ct.App.2007), an employee who muttered a curse word under her breath in the presence of a customer did not commit misconduct, according to this Court. This Court noted that “an isolated incident of misconduct by an employee does not generally disqualify the employee from receiving the benefit of unemployment compensation.” Id. at (¶ 19) (quoting Daniels v. Miss. Emp’t Sec. Comm’n, 904 So.2d 1195, 1197 (¶ 9) (Miss.Ct.App.2004)).
¶21. MDES cites Swinney v. Mississippi Employment Security Commission, 910 So.2d 742 (Miss.Ct.App.2005), and claims that it is controlling precedent. We disagree. This case is distinguishable from Swinney. There, an employee was discharged for inappropriate behavior. Id. at 744 (¶ 5). Swinney was verbally abusive to her district manager during an argument. Id. She had been previously cited for disrespect and use of profane language and was aware that she would be fired if she used abusive language toward management. Id. Here, Gammage's alleged behavior at most amounted to a single incident of disrespect. Gammage was never warned that she would be fired, nor did her conduct amount to multiple incidences of misconduct warranting a denial of unemployment benefits.
¶ 22. Because we find that Gammage was improperly denied unemployment benefits, we reverse the circuit court’s judgment and remand this case to the MDES for a determination of unemployment benefits.
¶ 23. THE JUDGMENT OF THE JASPER COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED TO THE MISSISSIPPI *1299 DEPARTMENT OF EMPLOYMENT SECURITY. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.