# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CC-01515-COA

**SHELLI D. BOUNDS**                                                       **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                 **APPELLEES**
**EMPLOYMENT SECURITY AND SAL-LIZ, INC.**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/2017 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KYLE BOYD AINSWORTH |
| ATTORNEYS FOR APPELLEES: | ALBERT B. WHITE |
| | JAMES RANDALL BUSH |
| | DON A. MITCHELL |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED **-** 11/20/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., GREENLEE AND TINDELL, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     The Mississippi Department of Employment Security (MDES) affirmed the denial of unemployment benefits following Shelli Bounds's termination from Sal-Liz Inc.  Bounds appealed to the Circuit Court of Rankin County, which affirmed MDES's decision.  Bounds appeals again, asserting the following issues: (1) whether Sal-Liz proved that she exhibited misconduct by substantial clear and convincing evidence; and (2) whether her alleged behavior constitutes insubordination that rises to the level of misconduct.  We find no error; therefore, we affirm.

FACTS

¶2.    On July 26, 2010, Bounds began working at Sal-Liz as a sales clerk.  On December 15, 2016, she was terminated.  Bounds filed for unemployment benefits.  A claims examiner determined that Bounds was terminated for committing misconduct connected with her employment and consequently denied her benefits.  Bounds appealed the denial of her claim, and an administrative law judge (ALJ) conducted a telephonic hearing on March 14, 2017.

¶3.    During the hearing, both Bounds and her former supervisor, Judy Alexander-Stamm, testified regarding the events that occurred on the day that Bounds was terminated.  Alexander-Stamm testified that she asked Bounds—who was standing nearby reviewing an order book—to assist a customer who had entered the store.  Bounds refused.  Alexander-Stamm again asked Bounds to assist the customer.  Bounds "slammed" the order book down onto the counter.  She picked up a clipboard to read the customer's name, then "threw the clipboard across the counter."  A little while later, Bounds went to the break room to have her lunch.  Alexander-Stamm followed her and said that she needed to talk to Bounds about her behavior in front of the customers.  Bounds replied that she was busy and to leave her alone.  Alexander-Stamm reasserted that she needed to talk to Bounds, and Bounds again refused.  At this point, Alexander-Stamm instructed Bounds to go home.  Bounds repeatedly asked Alexander-Stamm if she was firing her until Alexander-Stamm finally stated that she was.  Alexander-Stamm testified that Bounds was ultimately discharged "[f]or her behavior and insubordination, [and] lack of following instructions."  Alexander-Stamm maintained that she had not initially intended on firing Bounds, but that when Bounds continued to

2

refuse to follow instructions, she had no choice but to fire her.

¶4.    When asked whether she had ever had problems with Bounds before that date, Alexander-Stamm replied, "We always had a b-ah, she never would um . . . really help the customers. We would always have to go and ask her to help, and . . . sometimes she would just bury herself in the stockroom and just, you know, uh kind of hide to keep from helping customers. It was a[n] ongoing problem." Alexander-Stamm further maintained that while Bounds had "never really had an, an outburst of anger like [that] before," she had previously refused to help customers and refused to follow orders. Alexander-Stamm stated that she had spoken with Bounds about that behavior before.

¶5.    Bounds testified to a largely similar version of events occurring on December 15, 2016, but maintained that she did not slam the order book down or throw the clipboard across the counter. Bounds admitted that she refused to speak to Alexander-Stamm in the break room; however, she maintained that Alexander-Stamm never confirmed that she was actually firing her. Bounds also asserted that she had never been formally reprimanded prior to this incident. Bounds's sister, Theresa Borne, testified on behalf of Bounds. She agreed that Bounds's action of closing the book "made a loud sound," but she denied that Bounds slammed the clipboard onto the counter.

¶6.    Following the hearing, the ALJ found that Bounds had exhibited misconduct in that she displayed inappropriate behavior after being instructed to assist a customer, and further displayed inappropriate behavior when Alexander-Stamm tried to speak with her about her

behavior. Consequently, the ALJ denied unemployment benefits to Bounds. Bounds appealed to the MDES Board of Review (Board), which adopted the findings of fact and opinion of the ALJ and affirmed her decision. Bounds filed a notice of appeal and petition for review with the Circuit Court of Rankin County, which affirmed the Board's decision. Bounds timely appealed.

## DISCUSSION

¶ 7. "The standard of review in cases where this Court examines the circuit court's judgment affirming the Board's decision is abuse of discretion." *Windham v. Miss. Dep't of Emp't Sec.*, 207 So. 3d 1249, 1251 (¶8) (Miss. Ct. App. 2017). "An agency's findings should not be disturbed unless its order is: (1) not supported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope or power granted to the agency, or (4) violative of the claimant's constitutional rights." *Id*.

¶8. Mississippi Code Annotated section 71-5-513(A)(1)(b) (Supp. 2016) provides that an individual shall be disqualified from receiving unemployment benefits if "[s]he was discharged for misconduct connected with [her] work . . . ." Our supreme court has defined "misconduct" as

> conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or

4

> inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982). "The employer bears the burden of proving misconduct by substantial, clear, and convincing evidence." *Kidd v. Miss. Dep't of Emp't Sec.*, 202 So. 3d 1283, 1285 (¶6) (Miss. Ct. App. 2016).

¶9. Bounds contends that Sal-Liz presented insufficient evidence to prove by substantial, clear, and convincing evidence that she demonstrated misconduct, such that her unemployment benefits should be denied. However, we disagree. During the hearing, both Alexander-Stamm and Bounds testified to largely similar versions of the facts later delineated by the ALJ in her opinion. While Bounds contested Alexander-Stamm's testimony that she "slammed" the book onto the counter or threw the clipboard, she admitted that she refused to speak to Alexander-Stamm in the break room. Borne testified that while Bounds did not slam the book, the act of closing it "made a loud sound." Further, Sal-Liz provided sworn affidavits of Ouida Alsup, the owner of Sal-Liz and Alexander-Stamm's mother, and Debbie Campbell, a fellow employee who witnessed the latter half of events that occurred in the break room. Both Alsup and Campbell confirmed the version of events given by Alexander-Stamm. Campbell further stated that Bounds had previously expressed that she refused to quit and that "she wanted to get fired so that every time they wrote a check, the store would know they were paying her."

¶10. Bounds also maintains that her conduct was not insubordination rising to the level of

misconduct as required by section 71-5-513(A)(1)(b). "Insubordination is defined as a constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority." *Gammage v. Miss. Dep't of Emp't Sec.*, 113 So. 3d 1294, 1297 (¶13) (Miss. Ct. App. 2013). "Insubordination may rise to the level of misconduct on certain occasions." *Id*. at (¶15). An isolated incident is not a constant or continuing intentional refusal; however, "[t]his Court has held that when an employee repeatedly refuses to perform a task she was ordered to perform and curses at her supervisor, she has committed misconduct through her insubordination." *Id*. (citing *Miss. Emp't Sec. Comm'n v. Hudson*, 757 So. 2d 1010, 1014-15 (¶12) (Miss. Ct. App. 2000)).

¶11. Here, the record reflects that Bounds exhibited insubordination in the form of a continuing intentional refusal to obey a direct or implied order, both on the day of the incident and prior to it. Alexander-Stamm testified during the hearing that Bounds was notorious for avoiding customers and that she had previously refused to assist them and refused to follow instructions. While Alexander-Stamm acknowledged during the hearing that the store had no written policy mandating employees to voluntarily assist customers, she maintained that it was the common practice of their store to do so. Additionally, the record contains a request for information sent to Sal-Liz from the MDES after Bounds filed for unemployment benefits; in the explanation for why benefits should be denied, Alexander-Stamm wrote that the employees had been advised on December 11, 2016, that the store would be enacting hourly cutbacks due to slow sales. Alexander-Stamm maintained that

6

since learning about the cutbacks until her ultimate termination on December 15, 2016, "Bounds was rude, sullen and non-responsive to questions and request[s] to help customers." This evidence, taken together, demonstrates a pattern of refusal to obey orders, and constitutes insubordination.

¶12. Bounds contended during the hearing that in her six years of working at Sal-Liz, she had "never been written up or reprimanded" and that she had received a good evaluation a month or two prior to the date on which she was terminated. However, we deem that fact immaterial. The evidence suggests that Bounds was, in fact, insubordinate on more than one occasion. Accordingly, we see no reason to disturb the Board's decision to deny unemployment benefits.

¶13. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**